# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **DAVID R. FORD** | **CIVIL ACTION NO. 11-1232** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CHADWICK M. MONSOUR** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court is Defendant Chadwick M. Monsour's ("Monsour") Motion for Summary Judgment and Alternative Motion to Stay. [Doc. No. 12]. Plaintiff David R. Ford ("Ford") has filed an Opposition [Doc. No. 18] and Monsour has filed a Reply. [Doc. No. 19].

For the following reasons, Monsour's Motion for Summary Judgment is GRANTED and his Alternative Motion to Stay is DENIED as moot. Ford's Complaint [Doc. No. 1] is DISMISSED WITHOUT PREJUDICE.

**I.  FACTS**

Ford, a domiciliary of Mississippi, seeks a Declaratory Judgment from this Court for the purpose of declaring that Monsour, a domiciliary of Louisiana, has no claims against Ford in a Mississippi state court for alienation of affection and other torts.

Monsour and Mary Katherine Smith ("Smith") were married in Louisiana in 2005 and established their matrimonial domicile in Monroe, Louisiana, where it remained until they separated

1

in 2010. Monsour filed a Petition for Divorce in the Fourth Judicial District Court of Ouachita Parish, Louisiana on June 22, 2010, alleging that Smith had committed adultery. A Judgment of Divorce was entered on February 26, 2011.

Ford and Smith began a relationship during the summer of 2009. [Doc. Nos. 18-1, 18-2]. Ford is a resident of Madison County, Mississippi. [Doc. No. 1]. Smith characterized their relationship as "romantic" and said that she initiated physical contact with Ford while in Florida in August 2009. [Doc. No. 18-1]. Ford also stated that Smith initiated the contact in Florida. [Doc. No. 18-2]. Ford asserts that, outside of meeting Smith at the Jackson, Mississippi airport for the purpose of departing on a trip together, any physical contact he had with Smith in Mississippi took place after Monsour moved out of the marital home in May, 2010. [Doc. No. 18, pp. 4-5].

On March 29, 2011, Monsour's counsel sent Ford a letter advising him of Monsour's claim against him for alienation of affection under Mississippi law.[1] The parties dispute the nature of subsequent communications. Monsour characterizes them as "settlement negotiations with the parties making offers and counteroffers." [Doc. No. 12-1]. Ford contends he made a single settlement offer to Monsour's attorney with the stipulation that the offer was final. [Doc. No. 18, p. 12].

On June 26, 2011, Ford filed a Complaint for Declaratory Judgment in this Court seeking relief in the form of an order declaring that, because Monsour and Smith were married and domiciled in Louisiana, Louisiana law should govern the rights and benefits arising from their marriage, that

---

[1]The Mississippi Supreme Court has described the tort of alienation of affection as "where a husband . . . is wrongfully deprived of his rights to the 'services and companionship and consortium of his . . . wife . . .,' he . . . has a cause of action 'against one who has interfered with his . . . domestic relations.' " *Fitch v. Valentine* 959 So.2d 1012, 1018 -19 (Miss. 2007) (citation omitted).

a claim for alienation of affection is against the public policy of Louisiana, and that Monsour has no colorable claim against Ford for alienation of affection under Mississippi law. [Doc. No. 1, pp. 4-5].[2]

On July 8, 2011, Monsour filed suit against Ford in Madison County, Mississippi alleging Mississippi state law claims for alienation of affection, negligent infliction of emotional distress, and intentional infliction of emotional distress. [Doc. No. 12].[3]

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

### B. Abstention

The Declaratory Judgment Act states that "[a]ny court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201

---

[2]Ford also seeks relief in the form of an order declaring that Monsour has no claim against him for interference with the marriage contract or for negligent infliction of emotional distress and that he owes no duties or obligations to Monsour. He also seeks an award for attorneys' fees and costs.

[3]Note that in the instant proceedings, Ford is the plaintiff and Monsour is the defendant, whereas in the Mississippi proceedings, Monsour is the plaintiff and Ford is the defendant.

(emphasis added). In the Fifth Circuit, a district court considering whether or not to abstain from exercising jurisdiction over a declaratory judgment action is bound by the standards articulated in *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942). *See Southwind Aviation, Inc. v. Bergen Aviation Inc.*, 23 F.3d 948, 950 (5th Cir. 1994). In *Brillhart*, the Supreme Court held:

> Ordinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495. "*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995). Additionally, "[i]f a district court in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Id*. at 288. "Unless the district court addresses and balances the purpose of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion." *Travelers Insurance Co. v. Louisiana Farm Bureau Fed.*, 996 F.2d 774, 778 (5th Cir. 1993) (citation omitted).

### III. ANALYSIS AND DISCUSSION

Ford seeks a declaratory judgment in this Court with the objective of barring Monsour from proceeding against him in Mississippi state court. Monsour seeks summary judgment and dismissal of the case on discretionary abstention grounds or, in the alternative, a stay of the instant proceedings pending the outcome of the parallel Mississippi state court proceedings.

### A. Mandatory Abstention

The Fifth Circuit has mandated that district courts engage in a three-step inquiry when considering an action for a declaratory judgment. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "First, the court must determine whether the declaratory action is justiciable. Typically, this becomes a question of whether an 'actual controversy' exists between the parties to the action." *Id*. "Second, if it has jurisdiction, then the district court must resolve whether it has 'authority' to grant declaratory relief in the case presented." *Id*. That is, if the court does not have authority to grant declaratory relief, then abstention is mandatory. "Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id*.

With regard to the first step, Monsour does not dispute the justiciability of this action.

As for the second step, which addresses a district court's authority to grant declaratory relief, "[t]he Fifth Circuit has decided that when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction - providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act." *Travelers Insurance Co.*, 996 F.2d at 776 (citation omitted). The Anti-Injunction Act prohibits a federal court from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. As a general rule, a district court does not have the authority to consider the merits of a declaratory judgment action when (1) a declaratory defendant has previously filed a suit in state court against the declaratory plaintiff; (2) the state and federal cases involve the same issues; *and* (3) the Anti-Injunction Act prohibits the district court from enjoining the state proceedings. 996 F.2d at 776.

5

Because Ford filed the instant declaratory judgment action before Monsour filed his suit in state court, mandatory abstention is not warranted. *Chevron U.S.A., Inc v. Cureington*, 10-0764, 2011 WL 1085661, at *6 (W.D. La. Feb. 18, 2011) (citing *Travelers*, 996 F.2d at 776).[4]

### B.  Discretionary Abstention

If mandatory abstention is not warranted under the second prong of *Orix*, the court must determine whether to exercise its discretion to abstain. The Fifth Circuit has set forth seven non-exclusive factors that a court must consider when determining whether to decide or dismiss a declaratory judgment. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994). The *Trejo* factors include:

> 1) [W]hether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy...[7] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id*.

#### 1.  Whether all of the matters in controversy may be fully litigated in the pending state court action.

At issue is Ford's liability for damages arising from his alleged breaches of Mississippi tort law. Ford asserts that Monsour should have brought his claims as compulsory counterclaims in response to the declaratory judgment suit in this Court. [Doc. No. 18, p. 13]. Monsour points out,

---

[4]Since one of the three requisite factors for mandatory abstention is lacking, consideration of the remaining factors is unnecessary.

however, that because Ford is already subject to personal and subject matter jurisdiction in Mississippi, the state court may fully litigate all of the matters in controversy. [Doc. No. 12, pp. 6-7]. This factor weighs in favor of abstention because a Mississippi state court is capable of fully litigating all of Monsour's tort claims against Ford.

### 2. Whether Plaintiff filed suit in anticipation of Defendant's lawsuit.

Here, Ford filed suit in federal court before Monsour filed his action in Mississippi state court. Monsour characterizes Ford's filing as an attempt to win a race to the courthouse [Doc. No. 12-2, p. 5] while Ford characterizes Monsour's later Mississippi filing as the construction of a parallel proceeding for the sole purpose of creating grounds with which to argue for abstention. [Doc. No. 18, p. 13].

The Fifth Circuit has rejected a strict chronological approach for this factor. Instead, the Fifth Circuit requires "the court to consider whether the declaratory suit was filed *in anticipation* of a lawsuit filed by the declaratory defendant . . . ." *Travelers*, 996 F.2d at 779 n.15.

Although the parties disagree about Ford's motive for filing suit here, it is clear that Ford is requesting this Court to issue an order declaring that Louisiana law and public policy bar Monsour from seeking relief from Ford in a Mississippi state court. It is also clear that Ford knew Monsour was contemplating a lawsuit, given the March 29, 2011 letter from Monsour's attorney.

This factor weighs in favor of abstention – Monsour's characterization that Ford filed suit in this Court in anticipation of Monsour's lawsuit is reasonable given the narrative constructed by the filed pleadings. In fact, this Court recently found that a similar sequence of events supported a finding of anticipatory filing. *See Chevron*, 2011 WL 1085661, at *7.

### 3. Whether Plaintiff engaged in forum shopping in bringing the suit.

7

In *Travelers*, the Fifth Circuit identified two impermissible uses of the Declaratory Judgment Act: (1) filing suit in a race to obtain *res judicata*; and (2) seeking to thwart any advantage the defendant may have gained by filing suit first in state court. 996 F.2d at 779. On the other hand, the Fifth Circuit held that an appropriate application of the Declaratory Judgment Act is the use of the federal forum as a means "to avoid multiple lawsuits in numerous different forums." *Id.*

Ford argues that the instant action does not constitute forum shopping, citing *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 399 (5th Cir. 2003), for the proposition that a desire to avoid plaintiff-friendly state court juries is not an illegitimate reason to seek a declaratory action in anticipation of a state lawsuit. [Doc. No. 18, pp. 15-16]. This reading of *Sherwin-Williams* is out of context. In *Sherwin-Williams*, the Fifth Circuit enumerated two scenarios where seeking a declaratory action in a federal forum is appropriate – to avoid multiple lawsuits in multiple courts or to permit an out-of-state declaratory-plaintiff to avoid plaintiff-friendly state court juries through the use of diversity jurisdiction. 343 F.3d at 399. *Sherwin-Williams* also discussed two scenarios where the use of a federal forum would *not* be appropriate for pursuing a declaratory action – seeking to change the applicable law or restricting the declaratory judgment defendant from filing a state court action prior to the declaratory judgment, i.e., a race to *res judicata*. *Id*.

Here, Ford did not file a declaratory judgment action to avoid multiple lawsuits in multiple courts, but to avoid a single lawsuit in a Mississippi state court. Ford, who is domiciled in Mississippi, is not facing an unfriendly state court. It is unclear at this stage whether or not Ford is seeking to change the applicable law through his declaratory judgment filing. It does appear that Ford preemptively invoked diversity jurisdiction in order to restrict the declaratory judgment defendant from filing a state court action, which is behavior that *Sherwin-Williams* forbids.

8

Accordingly, Ford's pursuit of relief does not comport with any of the permissible reasons for seeking a declaratory action in federal court that the Fifth Circuit described in *Sherwin-Williams* or *Travelers*.

Here, the third factor of forum shopping weighs in favor of abstention. Ford is clearly seeking a judgment in this Court for the purpose of shielding himself from state law claims in a Mississippi court.

### 4. Whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist.

Monsour alleges that allowing Ford to proceed with his declaratory judgment action would be inequitable because Ford abruptly terminated settlement negotiations in order to preemptively begin litigation in an out-of-state forum. [Doc. No. 12-1, pp. 8-9]. Ford argues that no inequity arose from this action. Rather, he points out that it is impossible to create an inequity for Monsour because Monsour resides in the Monroe forum. [Doc. No. 18, pp. 17-18].

If Ford did engage in forum shopping by filing suit in Monroe, then this factor weighs in favor of abstention because the instant lawsuit would be an attempt by Ford to bar Monsour from pursuing a remedy under Mississippi law.

Additionally, if Ford broke off settlement negotiations by filing the instant action as Monsour alleges, and this Court declines to abstain, then Monsour would be penalized for attempting to settle out of court. Accordingly, declining to abstain here could have a chilling effect on parties otherwise inclined to seek settlement prior to engaging in litigation.

This factor weighs in favor of abstention, as this Court's failure to abstain would prevent Monsour from pursuing a remedy to which he may be entitled in a Mississippi court.

**5.   Whether the federal court is a convenient forum for the parties and witnesses.**

Both Ford and Monsour recite lists of witnesses in favor of each party's favored forum. Ford points out that many of the witnesses identified by Monsour live in Vicksburg, which is roughly equidistant from Monroe, Louisiana, and the Madison County Courthouse in Canton, Mississippi. [Doc. No. 18, pp. 18-19; Doc. No. 12-2, pp. 9-10].

This factor is abstention neutral as it is inevitable that some of the witnesses will have to travel from Canton to Monroe if this Court retains jurisdiction or from Monroe to Canton if this Court abstains.

**6.   Whether retaining the lawsuit in federal court would serve the purposes of judicial economy.**

Ford argues that retaining the federal court proceeding would better serve judicial economy because it has progressed further in the litigation process than the Mississippi action. [Doc. No. 18, p. 19] (noting that in the instant action, he has already served Requests for Admissions, Interrogatories, and Requests for Production of Documents on Monsour).

Monsour argues that this Court's retention of the instant case would result in piecemeal litigation because the same issues before the Mississippi state court are also before this Court. Such piecemeal litigation runs the risk of inconsistent rulings and unnecessary duplication of judicial resources. Monsour also points out that the Anti-Injunction Act precludes this court from issuing an injunction of the parallel state court action. [Doc. No. 12-2, p. 11]. Although Ford does not specifically request an injunction in his Complaint [Doc. No. 1], it is fair to characterize the declaratory relief that he seeks as "an end run around the Anti-Injunction Act" that the Fifth Circuit cautioned against in *Travelers*. 996 F.2d at 776.

Unlike the declaratory plaintiff in *Sherwin-Williams* (who faced multiple lawsuits based on similar causes of action in state courts throughout Mississippi), Ford does not stand to benefit from a ruling by this Court that would decide issues critical to his position in future suits by numerous plaintiffs in multiple state court forums. 343 F.3d at 400.

Accordingly, this sixth factor weighs in favor of abstention because this Court's failure to abstain may result in piecemeal litigation that could result in inconsistent rulings. Additionally, because the tort of alienation of affection is a cause of action in Mississippi, but not in Louisiana, a Mississippi state court is better equipped to determine whether it applies to the parties involved in this proceeding.[5] Thus, judicial economy will be best preserved by allowing Mississippi state courts to determine the outcome of the dispute here.

> 7. **Whether the federal court is being called on to construe a state judicial decree involving the same parties.**

This final *Trejo* factor is not applicable to the instant case because neither party is requesting this Court to construe a state judicial decree.

Of the seven *Trejo* factors, five are in favor of abstention, one is neutral, and one is not applicable. Accordingly, this Court will exercise its discretion to abstain from jurisdiction in Ford's request for a declaratory judgment.

---

[5] This Ruling does not directly address Ford's choice of law arguments; therefore, the Ruling does not prejudice his ability to make those arguments in Mississippi state court.

## IV. CONCLUSION

For the foregoing reasons, Monsour's Motion for Summary Judgment [Doc. No. 12] is GRANTED, and Ford's Complaint for Declaratory Judgment [Doc. No. 1] is DISMISSED WITHOUT PREJUDICE. Accordingly, Monsour's Alternative Motion to Stay [Doc. No. 12] is DENIED AS MOOT.

MONROE, LOUISIANA, this 11th day of October, 2011.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE